UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| GALLAGHER-KAISER CORP., | Case No.: 2:14-cv-00869-GMN-DJA |
| Plaintiff, | |
| vs. | **ORDER DENYING MOTION TO DISMISS** |
| LIBERTY DUCT, LLC, *et al.*, | |
| Defendants. | |

Pending before the Court is the Motion to Dismiss, (ECF No. 188), filed by Defendant NGM Insurance Company ("NGM"). Plaintiff Gallagher-Kaiser Corporation ("GK") filed a Response, (ECF No. 194), to which NGM filed a Reply, (ECF No. 200). For the reasons discussed below, the Court **DENIES** NGM's Motion to Dismiss.

I.         <u>**BACKGROUND**</u>

This action arises from a construction defect during the construction of an air traffic control tower and terminal radar approach control (the "Project") at Harry Reid International Airport, formerly known as McCarran International Airport. (*See generally* Fourth Am. Compl., ECF No. 184). The Federal Aviation Administration ("FAA") hired Archer Western Constructors ("AWC") as the Prime Contractor. (*Id.* ¶ 13). AWC contracted with GK for GK to be the mechanical subcontractor on the project. (*Id.* ¶ 1). GK in turn contracted with Liberty Duct, LLC ("Liberty") for the fabrication and delivery of all HVAC duct work and accessories per the Project plans and specifications, including anti-microbial coatings as required. (*Id.* ¶ 12).

**A. The NGM Policy**

The contract between GK and Liberty required Liberty to add GK as an additional

insured to its insurance policies. (*Id.* ¶ 14). NGM issued an insurance policy, the NGM Policy, to Liberty, which is the subject of the instant motion. (*Id.* ¶ 16). The Court assumes for purposes of this Motion that GK is an additional insured under the NGM Policy. (*See* Mot. Dismiss 11:26–28). The NGM Policy included a Business Liability section stating that NGM "will have the right and duty to defend the insured against any 'suit' seeking [] damages" to which the insurance applies. (NGM Policy at NGM_000337, Ex. A to Mot. Dismiss, ECF No. 188-1).

The NGM Policy defines the relevant terms and establishes when NGM's duty to defend applies. Namely, the insurance applies to bodily injury and property damage "caused by an 'occurrence' that takes place in the 'coverage territory'" and that "occurs during the policy period." (*Id.*). Further, a "suit" includes an "arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; [a]ny other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent." (*Id.* at NGM_000351). And if an occurrence may result in a claim or if a claim is made against the insured, the insured is required to notify NGM as soon as practicable. (*Id.* at NGM_000348).

The NGM Policy was supposed to be in effect from October 15, 2012, to October 15, 2013, but NGM cancelled the policy before the end of the policy term because Liberty failed to pay the premium. (NGM Policy at NGM_000287, Ex. A to Mot. Dismiss); (Policy Change, Ex. B to Mot. Dismiss, ECF No. 188-2).[1] The cancellation was effective May 11, 2013. (Policy Change, Ex. B to Mot. Dismiss). Thus, the Policy Period for the NGM Policy was October 15, 2012, to May 11, 2013.

---

[1] The Court considers the NGM Policy documents without construing this Motion to Dismiss as a Motion for Summary Judgment because "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (*overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002)).

**B. Liberty's Allegedly Defective Ductwork and the FAA's Rejection of the Ductwork**

GK alleges that Liberty supplied it with defectively coated round and rectangular duct. (Fourth Am. Compl. ¶ 23). On November 28, 2012, GK notified Liberty that the antimicrobial coating on a portion of ductwork Liberty supplied was failing to adhere to the inside of the ductwork. (*Id.*). Liberty then delivered replacement ductwork.[2] (*Id.*). Despite this replacement ductwork, the FAA issued a non-conformance report on January 28, 2014, because the antimicrobial coating of the replacement ductwork peeled off during start-up and testing of the mechanical systems installed on the Project. (*Id.* ¶ 24). The airborne flakes of the coating created potential health and environmental concerns that could damage the mechanical systems and the sensitive computer and operating systems within the air traffic control tower. (*Id.* ¶ 25). Independent, third-party tests of the antimicrobial coating indicated that Liberty negligently and defectively performed its work, which could not be discovered by inspecting the supplied ductwork at the time of delivery or during installation. (*Id.* ¶ 26). Rather, the peeling could not be discovered until the mechanical systems were started, creating an operating air flow through the ductwork. (*Id.* ¶ 25).

The FAA rejected the round and rectangular duct. (*Id.* ¶ 32). Despite GK's position that the duct did not need to be removed, the FAA demanded that GK remove the duct and follow the dispute resolution provision of the Prime Contract between the FAA and AWC, which, according to GK, meant that GK had to defend against the rejection of the duct by submitting and pursuing its claims with the FAA under the dispute processes set forth in the Prime Contract. (*Id.* ¶ 33). GK alleges that under the Prime Contract, GK could not refuse to remove the duct, or it would be in breach of contract and likely terminated from the Project, subjecting GK to additional damages. (*Id.* ¶ 34). Accordingly, GK replaced the duct at significant cost.

---

[2] The Fourth Amended Complaint does not specify when exactly the replacement ductwork was delivered. NGM insinuates that the replacement ductwork was delivered outside of the policy period. (Mot. Dismiss 16:16–25).

(*Id.* ¶ 35).

**C. Procedural History and the ODRA Decision**

GK initiated this action against Liberty only in June of 2014. (*Id.* ¶ 36). Liberty sent the Complaint to its insurance carriers, including NGM, demanding they accept tender of defenses and indemnify Liberty for the claims GK asserted against it. (*Id.* ¶ 37). NGM denied coverage for Liberty on December 4, 2014, stating that the allegations made against Liberty were excluded by the NGM Policy. (*Id.* ¶ 38). GK sent correspondence to NGM on May 18, 2015, noting its disagreement with NGM's coverage denial of Liberty's claim. (*Id.* ¶ 41). GK sent additional correspondence to NGM on June 24, 2015, advising NGM that GK would be seeking default and default judgment against their insured, Liberty. (*Id.* ¶ 43). NGM did not respond to either letter. (*Id.* ¶ 44).

The action was stayed pending the FAA dispute resolution proceedings with the Office of Dispute Resolution for Acquisition ("ODRA"). (*Id.* ¶ 48). GK alleges that all parties understood that the outcome of the ODRA proceeding would determine whether Liberty and GK were responsible for repair damages. (*Id.* ¶ 51). Until such time as the ODRA proceeding was concluded, Liberty was not obligated to indemnify GK, nor would NGM have a duty to indemnify GK as an additional insured under the NGM Policy. (*Id.*).

The ODRA Decision found that the FAA was justified in rejecting all the duct furnished by Liberty, and therefore Liberty and GK were responsible for the repair damages. (*Id.* ¶ 58). GK appealed the ODRA Decision as to the rectangular duct only, and the United States Court of Appeals for the District of Columbia Circuit affirmed. (*Id.* ¶ 59). GK alleges that the ODRA Decision triggered NGM's duty to defend and indemnify GK as an additional insured because GK and Liberty are "legally obligated" to pay the repair damages, which GK has already done. (*Id.* ¶¶ 66–68). GK further alleges that by following the Prime Contract requirements to remove the duct even though GK disagreed with the FAA, and submitting a claim through

1  ODRA, GK was defending against FAA's claim against GK. (*Id.* ¶ 69).  GK served NGM with
2  a "Tender of Defense and Indemnity" letter on November 22, 2022. (*Id.* ¶ 72).  NGM did not
3  respond to the Tender Letter. (*Id.* ¶ 73).

4  GK brings four causes of action against NGM:[3] Breach of Contract, Tortious Breach of
5  the Implied Covenant of Good Faith and Fair Dealing, Violation of Nevada Unfair Claims
6  Practices Act, and Declaratory Relief. (*See generally id.*).  All four claims arise under NGM's
7  alleged duty to defend and indemnify GK.  NGM now moves to dismiss each claim.[4]

8  **II.      LEGAL STANDARD**

9  Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon
10 which relief can be granted. Fed. R. Civ. P. 12(b)(6).  A pleading must give fair notice of a
11 legally cognizable claim and the grounds on which it rests, and although a court must take all
12 factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Bell*
13 *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Accordingly, Rule 12(b)(6) requires "more
14 than labels and conclusions, and a formulaic recitation of the elements of a cause of action will
15 not do." *Id.*  "To survive a motion to dismiss, a complaint must contain sufficient factual
16 matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*
17 *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial
18 plausibility when the plaintiff pleads factual content that allows the court to draw the
19 reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This standard
20 "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*
21 ///

---

[3] GK originally sued a different insurance carrier before it learned that NGM was the carrier who issued the NGM Policy. (Fourth Am. Compl. ¶ 65).

[4] NGM first moved to dismiss the claims against it in the Third Amended Complaint as untimely. (Mot. Dismiss Third Am. Compl., ECF No. 160).  The Court granted NGM's motion without prejudice and with leave to amend. (Min. Proceedings, ECF No. 182).  GK then filed the Fourth Amended Complaint, and NGM filed the instant Motion to Dismiss.

III.      **DISCUSSION**

NGM argues that all of GK's claims against it fail because (1) NGM does not have a duty to defend GK; (2) NGM does not have a duty to indemnify GK; (3) even if there is a duty to indemnify, it is not covered due to GK's failure to notify NGM; and (4) the "damages" alleged are not covered because they did not occur during the policy period. "Under an insurance policy, the insurer owes two contractual duties to the insured: the duty to defend and the duty to indemnify." *Zurich Am. Ins. Co. v. Ironshore Specialty Ins. Co.*, 497 P.3d 625, 628 (Nev. 2021). "The duty to indemnify arises when an insured 'becomes legally obligated to pay damages in the underlying action that gives rise to a claim under the policy.'" *United Nat'l Ins. Co. v. Frontier Ins. Co.*, 99 P.3d 1153, 1157 (Nev. 2004) (quoting *Zurich Ins. Co. v. Raymark Industries*, 514 N.E.2d 150, 163 (Ill. 1987)). "The duty to defend is broader than the duty to indemnify." *Id.* at 1158. "[A]n insurer . . . bears a duty to defend its insured whenever it ascertains facts which give rise to the *potential* of liability under the policy." *Id.* (quoting *Gray v. Zurich Ins. Co.*, 419 P.2d 168, 177 (Cal. 1966)) (emphasis added). Because the Court finds whether NGM has a duty to defend or indemnify GK is not suited for disposition at the motion to dismiss stage, the Court DENIES NGM's Motion.

A.      **Duty to Defend**

NGM argues that it never had a duty to defend GK. (Mot. Dismiss 9:19–11:10). NGM's argument is threefold: NGM contends that (1) there was no "suit" from which NGM had an obligation to defend; (2) there was nothing for NGM to defend GK against because GK initiated the ODRA process and this action; and (3) when GK tendered the defense to NGM in November of 2022, there was nothing to defend because the project was finished and the ODRA proceeding and subsequent appeal was completed. (Mot. Dismiss 9:26–11:6). The Court is not persuaded.

///

1         First, the express language of the NGM Policy confirms that the ODRA Proceeding was a "suit" under the Policy. The NGM Policy defines "suit" to include alternative dispute resolution proceedings.[5] (NGM Policy at NGM_000351, Ex. A to Mot. Dismiss). And the Fourth Amended Complaint alleges that GK followed the "dispute resolution procedure" required by the Prime Contract. (Fourth Am. Compl. ¶ 33). To the extent NGM attempts to argue it did not "consent" to the ODRA proceeding, as required to fit the definition of "suit" under the Policy, it raises this argument for the first time in its Reply. (Reply 5:5–10, ECF No. 200). The Court finds, at least as alleged on the face of the Complaint, that the ODRA Proceeding constituted a "suit" for purposes of insurance coverage under the NGM Policy. If NGM later presents evidence that the ODRA Proceeding was not a suit or that NGM did not consent to it, NGM may raise the issue on summary judgment.

         Second, NGM has not demonstrated that GK being the initiator of the ODRA Proceeding means there is nothing for NGM to defend. Indeed, the Fourth Amended Complaint alleges that when the FAA demanded that GK remove the duct and follow the dispute resolution provision of the Prime Contract, "GK had to defend against the rejection of the duct by submitting and pursuing its claims with the FAA." (Fourth Am. Compl. ¶ 33). NGM is nonetheless correct that "affirmative claims seeking monetary damages are not covered by the duty to defend." *Jaynes Corp. v. Am. Safety Indem. Co.*, No. 2:10-CV-00764-MMD, 2014 WL 1685921, at *5 (D. Nev. Apr. 25, 2014). But GK was not seeking monetary damages in the ODRA Proceeding; rather, GK was challenging the FAA's rejection of the ductwork. Accordingly, at this stage of the litigation, the Court cannot find that the duty to defend did not attach because GK initiated the ODRA Proceeding.

---

[5] The parties cite competing caselaw regarding what constitutes a "suit" for purposes of insurance coverage. *Compare Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co.*, 959 P.2d 265, 279–80 (Cal. 1998), *as modified* (Sept. 23, 1998), *with Ameron Internat. Corp. v. Ins. Co. of State of Pennsylvania*, 242 P.3d 1020, 1024–30 (Cal. 2010), *as modified* (Jan. 19, 2011). Because the NGM Policy defines "suit" to include alternative dispute resolution proceedings, the Court finds this caselaw immaterial.

1       Third, even if GK tendered the defense to NGM after the ODRA Proceeding and Appeal
2 were completed, NGM may still have a duty to defend. "In a case where the duty to defend
3 does in fact arise, and the insurer breaches that duty, the insurer is at least liable for the
4 insured's reasonable costs in mounting a defense in the underlying action." *Century Sur. Co. v.*
5 *Andrew*, 432 P.3d 180, 184 (Nev. 2018). That is, the duty to defend still exists after the defense
6 is complete because the insured may be entitled to recoup the costs associated with the
7 defense.[6] Accordingly, the Court DENIES NGM's Motion on the basis that it does not have a
8 duty to defend.

9      **B.    Duty to Indemnify**

10       NGM argues that it has no duty to indemnify GK "because there is nothing to
11 indemnify." (Mot. Dismiss 12:18–19). Specifically, NGM asserts that there was never a claim
12 or suit against GK, and GK has not entered into a settlement or had a judgment entered against
13 it. (*Id.* 12:19–21).
14       "The duty to indemnify arises when an insured becomes legally obligated to pay
15 damages in the underlying action that gives rise to a claim under the policy." *United Nat'l Ins.*
16 *Co. v. Frontier Ins. Co.*, 99 P.3d 1153, 1157 (Nev. 2004) (internal quotation marks omitted).
17 GK argues that following the ODRA Decision and appeal, it was legally obligated to pay the
18 repair damages. (Resp. 13:1–3, ECF No. 194). NGM contests GK's characterization of the
19 ODRA Proceeding and asserts that the ODRA Decision did not make GK legally obligated to
20 pay anything. (Reply 7:17–18). Instead, NGM argues that this was a contract dispute regarding
21 the acceptability of the ductwork, and when GK lost that dispute, it incurred costs. (*Id.* 7:18–
22 21).
23 ///
24
25 [6] As discussed below, the Court cannot determine whether GK properly noticed NGM. The Court makes no finding here regarding whether a duty to defend exists after the defense is complete when notice is not tendered until after the defense is complete.

The Fourth Amended Complaint includes a legal conclusion that GK and Liberty were "legally obligated" to pay the repair damages following the ODRA Decision. Such legal conclusions are not sufficient to survive a motion to dismiss. *Twombly*, 550 U.S. at 555. Nonetheless, the Court finds that GK has alleged sufficient facts to state a claim for indemnification. Namely, the only way for GK to defend against the FAA's rejection of the ductwork was to initiate the ODRA Proceeding, and the ODRA Decision found that the FAA was justified in rejecting the duct furnished by Liberty. (Fourth Am. Compl. ¶¶ 33, 58). The Court can draw the reasonable inference that the ODRA Decision made GK "legally obligated" to pay the repair damages associated with removing and replacing the defective duct. *See Iqbal*, 556 U.S. at 678. Accordingly, the Court DENIES NGM's Motion on the basis that it did not have a duty to indemnify.

**C.     Notice**

Alternatively, NGM argues that even if it had a duty to indemnify GK, GK failed to notify NGM. (Mot. Dismiss 13:17–15:19). "[I]n order for an insurer to deny coverage of a claim based on the insured party's late notice of that claim, the insurer must show (1) that the notice was late and (2) that it has been prejudiced by the late notice." *Las Vegas Metro. Police Dep't v. Coregis Ins. Co.*, 256 P.3d 958, 965 (Nev. 2011). "Prejudice exists 'where the delay materially impairs an insurer's ability to contest its liability to an insured or the liability of the insured to a third party.'" *Id.* (quoting *West Bay Exploration v. AIG Specialty Agencies*, 915 F.2d 1030, 1036–37 (6th Cir.1990)).

The parties dispute which of GK's letters to NGM, if any, constitute legal notice. This dispute appears better suited for disposition on a motion for summary judgment rather than a motion to dismiss because the various letters, though mentioned in the Complaint, are not before the Court on this Motion. Even if GK's notice was untimely, however, the Court finds that NGM has not sufficiently demonstrated that it was prejudiced by the allegedly untimely

notice. The Fourth Amended Complaint alleges that Liberty tendered notice of GK's claims against Liberty to NGM, and NGM denied coverage to Liberty. (Fourth Am. Compl. ¶¶ 36–38). Regardless of whether GK complied with its own obligation under the policy as an additional insured to provide notice, the face of the Complaint alleges that NGM had actual knowledge of the claims at issue. As GK argues, "[e]ven if GK would have notified NGM of its own claim as an additional insured under the Policy at the same time Liberty made its claim, such an effort would have been futile. NGM would have treated GK's claim just as it did Liberty's claim—denied it and ignored any correspondence requesting it to reconsider its position." (Resp. 14:15–18). NGM may raise its notice argument in a motion for summary judgment if evidence reveals that GK did not comply with the notice provisions of the policy and that NGM was prejudiced by such late notice. But at this stage, the Court DENIES NGM's Motion on the basis that it does not have a duty to indemnify.

### D. Damages During the Policy Period

Lastly, NGM argues that there is no potential for coverage under the policy because no damages occurred during the policy period. (Mot. Dismiss 15:20–16:25); *see Nat'l Fire & Marine Ins. Co. v. Redland Ins. Co.*, No. 3:13-cv-00144-LRH, 2014 WL 3845153, at *4 (D. Nev. Aug. 5, 2014) ("[T]he duty to defend is only triggered when there is an 'occurrence' or a physical manifestation of 'property damage' during the relevant policy period."). According to NGM, the "only thing that happened during the NGM policy period was the original contract with Liberty and the original supply of ductwork. That ductwork was then replaced, and it was the subsequent ductwork that allegedly caused the damage in 2014, after the system was started up." (Mot. Dismiss 16:18–21). The Fourth Amended Complaint, however, alleges that, "On November 28, 2012, GK notified Liberty that the antimicrobial coating on a portion of ductwork Liberty supplied was failing to adhere to the inside of the ductwork. In response, Liberty delivered replacement ductwork to replace the defectively coated ductwork known *at*

*that time*." (Fourth Am. Compl. ¶ 23) (emphasis added).  Based on the face of the Complaint, the Court cannot find that the defective replacement ductwork was delivered and incorporated into the Project after the policy period expired on May 11, 2013. (*See* Ex. B to Mot. Dismiss, ECF No. 188-2).  Accordingly, the Court DENIES NGM's Motion based on the timing of the alleged damages.  If evidence later reveals that GK's claims fall outside of the coverage period, NGM may raise the issue in a motion for summary judgment.

## V.  CONCLUSION

**IT IS HEREBY ORDERED** that NGM's Motion to Dismiss, (ECF No. 188), is **DENIED**.

**IT IS FURTHER ORDERED** that NGM shall have 30 days from the date of this Order to file a motion for summary judgment.

**DATED** this __18__ day of July, 2024.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT