UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| GALLAGHER-KAISER CORP.,<br><br>                    Plaintiff,<br><br>    vs.<br><br>LIBERTY DUCT, LLC, *et al.*,<br><br>                    Defendants. | Case No.: 2:14-cv-00869-GMN-DJA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT** |

Pending before the Court is the Motion for Default Judgment, (ECF No. 210), filed by Cross-Claimant NGM Insurance Company against Cross-Defendant Liberty Duct.  Liberty did not file a Response.[1]  For the reasons discussed below, the Court **GRANTS in part and DENIES in part** NGM's Motion for Default Judgment against Liberty Duct.

I.      **BACKGROUND**

This action arises from a construction defect during the construction of an air traffic control tower and terminal radar approach control at Harry Reid International Airport. (Fourth Am. Compl. ¶ 1, ECF No. 153).  The Federal Aviation Administration ("FAA") hired Archer Western Constructors ("AWC") as the Prime Contractor. (*Id.* ¶ 13).  AWC contracted with Gallagher-Kaiser ("GK") to be the mechanical subcontractor on the project. (*Id.* ¶ 1).  GK in turn contracted with Liberty for the fabrication and delivery of all HVAC duct work and accessories per the Project plans and specifications, including anti-microbial coatings as required. (*Id.* ¶ 12).

---

[1] Liberty Duct, LLC's status is listed as "permanently revoked" on the Secretary of State's business entity search engine.  At the hearing on November 29, 2023, the Court established on the record that Liberty is defunct and no longer participating in this case.

NGM is an insurance company that issued a policy, ("the NGM Policy"), on behalf of Liberty. (*Id.* ¶ 4). The contract between GK and Liberty required Liberty to add GK as an additional insured to its insurance policies. (*Id.* ¶ 14). The NGM Policy included a Business Liability section stating that NGM "will have the right and duty to defend the insured against a 'suit' seeking [] damages" to which the insurance applies. (NGM Policy at NGM_000337, Ex. A to Mot. Dismiss, ECF No. 188-1); (Mot. Default J. 2:19–23). The NGM Policy was intended to be in effect from October 15, 2012, to October 15, 2023, but NGM cancelled the policy before the end of the policy term because Liberty failed to pay the premium. (NGM Policy at NGM_000287, Ex. A to Mot. Dismiss); (Policy Change, Ex. B to Mot. Dismiss, ECF No. 188-2); (Mot. Default J. 2:13–15). The cancellation was effective May 11, 2013. (*Id.*). Thus, the Policy Period for the NGM Policy was October 15, 2012, to May 11, 2013. Liberty then delivered replacement ductwork. (*Id.* 4:18–19). NGM alleges that the last delivery occurred on May 13, 2013. (*Id.* 4:19–20). On January 28, 2014, during the start-up and testing of the systems, the antimicrobial coating of the duct work began flaking and delaminating. (*Id.* 4:20–22). The FAA subsequently issued a Non-Conformance Report and rejected all the duct work. (*Id.* 4:24–28).

GK subsequently brought this suit against Liberty for its allegedly defective duct work and the costs GK incurred to remove and replace it. (*Id.* 4:26–28). Liberty initially tendered its defense of the suit to NGM in 2014. (*Id.* 5:1–2). At that time, NGM issued a denial letter to Liberty that explained its position that the Policy did not provide coverage for the claims asserted against Liberty in this action. (*Id.* 5:2–4). Plaintiff subsequently pursued administrative claims through the FAA's Office of Dispute Resolution ("ODRA") process, challenging the FAA's directive that all of the duct work was defective and needed to be replaced. (*Id.* 5:5–8). GK appealed the ODRA Decision, and the United States Court of

Appeals for the District of Colombia Circuit affirmed. (*Id.* 5:8–9). Throughout this process, Liberty did not provide NGM with notice of the ODRA proceedings or appeal. (*Id.* 5:11–13).

NGM filed a Crossclaim for Declaratory Relief against Liberty in April of 2024. NGM seeks a determination that (1) Plaintiff asserts no claims against Liberty for which there is potential coverage under the Policy; (2) NGM has no duty to defend Liberty in connection with the claims asserted by Plaintiff against it in this suit; and (3) NGM has no duty to indemnify Liberty in connection with the claims asserted by Plaintiff against it in this suit. (Crossclaim for Declaratory Relief 8:1–12, ECF No. 202). Liberty was served with the Crossclaim by mail at Liberty's last known address in April of 2024, and was served again by mail at two alternative addresses in May of 2024. (Mot. Default J. 6:3–6). Liberty failed to appear or respond to the Crossclaim by the deadline. (*Id.* 6:6–7). NGM filed an Application for Entry of Default, (ECF No. 203), and the Clerk subsequently entered Default against Liberty, (ECF No. 206). NGM now moves for default judgment under Federal Rule of Civil Procedure 55(b).

## II. **LEGAL STANDARD**

Obtaining default judgment is a two-step process governed by Rule 55 of the Federal Rules of Civil Procedure ("FRCP"). *See Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). First, the moving party must seek an entry of default from the clerk of court. FRCP 55(a). Entry of default is only appropriate when a party "has failed to plead or otherwise defend." *Id.* After the clerk enters the default, a party must then separately seek entry of default judgment from the court in accordance with Rule 55(b). Upon entry of a clerk's default, the court takes the factual allegations in the complaint as true, except those relating to the amount of damages. *See TeleVideo Sys., Inc. v. Heidenthal,* 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam).

In determining whether to grant default judgment, courts are guided by the following seven factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the

action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong public policy favoring decisions on the merits. *Eitel*, 782 F.2d at 1471–72.

## III. DISCUSSION

As an initial matter, NGM has met the first step of the two-step process for obtaining default judgment. Pursuant to FRCP 55(a), the Clerk of the Court correctly entered default against Liberty because it has not appeared since NGM filed its Crossclaim against Liberty. (*See* Entry Default, ECF No. 206). Thus, the Court, in its discretion, may order a default judgment based on a balance of the *Eitel* factors.

### A. Possibility of Prejudice to the NGM

A defendant's failure to respond or otherwise appear in a case "prejudices a plaintiff's ability to pursue its claims on the merits." *See, e.g.*, *Nationstar Mortg. LLC v. Operture, Inc.*, No: 2:17-cv-03056-GMN-PAL, 2019 WL 1027990, at *2 (D. Nev. Mar. 4, 2019); *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery.").

The first *Eitel* factor weighs in favor of granting NGM's motion because it will otherwise be denied recourse for a final determination of its policy obligations. *See Liberty Ins. Underwriters Inc. v. Scudier*, 53 F. Supp. 3d 1308, 1318 (D. Nev. 2013). NGM filed its Crossclaim in order to determine its rights or duties with regard to the claims asserted against Liberty. Without the entry of default judgment, NGM could be asked to defend or indemnify Liberty against the claims filed in the underlying suit. Thus, the Court finds this potential prejudice weighs in favor of granting a default judgment. *See Scudier*, 53 F. Supp. 3d at 1318; *see also Progressive Universal Ins. Co. v. Minica*, No. 2:22-CV-01573-HL, 2023 WL 5435976, at *3 (D. Or. July 18, 2023), *report and recommendation adopted*, 2023 WL 5432527 (D. Or. Aug. 23, 2023).

### B. Plaintiffs' Substantive Claims and the Sufficiency of the Complaint

The second and third factors focus on the merits of NGM's substantive claims and the sufficiency of the complaint. *See Eitel*, 782 F.2d at 1471. These factors, often analyzed together, require courts to determine whether a plaintiff has "state[d] a claim on which [it] may recover." *PepsiCo*, 238 F. Supp. 2d at 1175. Courts often consider these factors "the most important." *Vietnam Reform Party v. Viet Tan – Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019). If a district court has "serious reservations" about the merits of a plaintiff's claims based on the pleadings, these factors weigh in favor of denying default judgment. *See Eitel*, 782 F.2d at 1472. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Where the allegations in a complaint are not 'well-pleaded,' liability is not established by virtue of the defendant's default and default judgment should not be entered." *See Adobe Sys., Inc. v. Tilley*, No. C 09-1085 PJH, 2010 WL 309249, at *3 (N.D. Cal. Jan. 19, 2010).

NGM states a plausible claim that no coverage exists under its policies for the claims against Liberty. (*See generally* Crossclaim, ECF No. 202). Upon default, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Financial Group*, 559 F.3d 557, 560 (9th Cir. 1997). NGM alleges that the damage did not occur until after the policy period expired. (Crossclaim ¶ 26). The NGM Policy was effective from October 15, 2011, to October 15, 2012, and was renewed for the October 15, 2012, to October 15, 2013, policy period until it was cancelled for non-payment of premium in May 2013. (*Id.* ¶ 4–5). NGM alleges that the antimicrobial coating of the duct work started to peel off on January 28, 2014, and the FAA subsequently issued a Non-Conformance Report and rejected all the duct work. (*Id.* ¶ 9). Because the peeling that led to

the FAA's rejection of the duct work and ultimately led to this lawsuit did not occur until January 28, 2014, and the policy was cancelled as of May 2013, NGM plausibly alleges that there was no coverage at the time of the alleged "damages." These allegations meet the standard for default judgment because they plausibly allege that the damage occurred outside the NGM policy period.[2]

### C. The Sum of Money at Stake in the Action

The fourth *Eitel* factor addresses the damages at stake in the action. *See Eitel*, 782 F.2d at 1471. The Court considers "the amount of money requested in relation to the seriousness of the defendant's conduct, whether large sums of money are involved, and whether 'the recovery sought is proportional to the harm caused by [the] defendant's conduct.'" *Next Gaming, LLC v. Glob. Gaming Grp., Inc.*, No. 214CV00071MMDCWH, 2016 WL 3750651, at *3 (D. Nev. July 13, 2016) (quoting *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 921 (N.D. Cal. 2010)). NGM seeks only equitable relief in the form of an adjudication of the parties' rights and obligations. (Crossclaim 8:2–12). Because there is no money directly at stake in this litigation the court finds that this factor weighs in favor of granting default judgment. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1177; *Scudier*, 53 F. Supp. 3d at 1318.

### D. Possibility of a Dispute Concerning Material Facts

The fifth *Eitel* factor evaluates the possibility of dispute as to any material facts in the case. *PepsiCo., Inc.*, 238 F. Supp. 2d at 1177. Once the Clerk of Court enters default, all well-pleaded facts in complaint, except those relating to damages, are taken as true. *Id.* Here, NGM filed a well-pleaded Crossclaim alleging the facts necessary to establish its claims, and the Clerk entered default against Liberty. Thus, no dispute has been raised regarding the material

---

[2] While NGM has plausibly alleged this fact in its crossclaim in satisfaction of the default judgment standard, this Order does not decide the issue of whether the policy covered the alleged damages in this case as it pertains to GK's coverage.

averments of the complaint, and the likelihood that any genuine issue may exist is not high. This factor therefore favors the entry of default.

### E. Excusable Neglect

The sixth factor considers whether Liberty's default is due to excusable neglect. *Id*. If a defendant is "properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion," the default "cannot be attributed to excusable neglect." *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001). Liberty was properly served with NGM's pleading, as well as with NGM's request for entry of default and renewed motion for default judgment. (ECF Nos. 205-1, 213-1). Thus, Liberty had notice of NGM's intent to pursue a default judgment against it, yet it has not filed anything in response to the filings. The Court established at a hearing in November of 2023 that Liberty Duct is defunct and no longer participating in this case. This factor therefore weighs in favor of default judgment.

### F. Policy for Deciding on the Merits

The final favor weighs against default judgment. As the Ninth Circuit explained in *Eitel*, "default judgments are ordinarily disfavored." 782 F.2d at 1472. "Cases should be decided upon their merits whenever reasonably possible." *Id*. But the existence of Rule 55(b) "indicates that this preference, standing alone, is not dispositive." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Liberty's failure to answer or otherwise respond to the complaint "makes a decision on the merits impractical, if not impossible." *Id.*

### G. Conclusion Regarding the Eitel Factors

Evaluating the *Eitel* factors as applied to this case, the Court finds that the majority of the factors support the entry to default judgment. Having reviewed NGM's Motion and evidence previously submitted in this case, and having considered the *Eitel* factors, the Court concludes that the entry of default judgment against Liberty is appropriate.

### H. Terms of the Judgment to be Entered

After determining that a party is entitled to entry of default judgment, the Court must determine the terms of the judgment to be entered. Here, NGM's claim for relief is the entry of a declaratory judgment that NGM has no obligation to defend or indemnify Liberty. As discussed above, NGM's well-pled allegations, when taken as true, show that it is entitled to such relief. Accordingly, the Court GRANTS NGM's claim for declaratory judgment that NGM has no duty to defend or indemnify Liberty in connection with the claims asserted against Liberty in this suit.[3]

## V. CONCLUSION

**IT IS HEREBY ORDERED** that Cross-Claimant NGM's Motion for Default Judgment, (ECF No. 210), is **GRANTED in part and DENIED in part.** The Court GRANTS declaratory judgment that NGM does not have a duty to defend or indemnify Liberty in connection with the claims asserted against Liberty in this suit. The Court DENIES NGM's request for attorney's fees and costs without prejudice.

**DATED** this __29__ day of October, 2024.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT

---

[3] NGM also requests "reasonable attorney's fees and costs." (Mot. Default J., 12:11). A motion for attorney's fees must comply with the requirements set forth in Federal Rule of Civil Procedure 54(d)(2)(B) and Local Rule 54-14. Because the motion does not comply with these requirements, the Court denies the Motion for Default Judgment with respect to the request for attorney's fees and costs without prejudice.