# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

|  |  |
|---|---|
| GALLAGHER-KAISER CORP., | |
| Plaintiff, | Case No.: 2:14-cv-00869-GMN-DJA |
| vs. | **ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT** |
| LIBERTY DUCT, LLC, *et al.*, | |
| Defendants. | |

Pending before the Court is Defendant Hartford Casualty Insurance Company's Motion for Summary Judgment, (ECF No. 230). Plaintiff Gallagher-Kaiser Corporation ("GK") filed a Response, (ECF No. 239), to which Hartford filed a Reply, (ECF No. 245). Also pending before the Court is NGM Insurance Company's Motion for Partial Summary Judgment, (ECF No. 231). GK filed a Response, (ECF No. 241), to which NGM filed a Reply, (ECF No. 254).

Because the Court finds that GK is not an additional insured under either the Hartford or NGM Policies, the Court **GRANTS** Hartford's Motion for Summary Judgment and NGM's Motion for Partial Summary Judgment.

## I. BACKGROUND

This action arises from a construction defect during the construction of an air traffic control tower and terminal radar approach control (the "Project") at Harry Reid International Airport, formerly known as McCarran International Airport. (*See generally* Fourth Am. Compl., ECF No. 184). The Federal Aviation Administration ("FAA") hired Archer Western Constructors ("AWC") as the Prime Contractor. (Watts Decl. ¶ 3, Ex. A to Hartford Mot. Summ. J ("Hartford MSJ"), ECF No. 230-2). AWC contracted with GK for GK to be the mechanical subcontractor on the project. (*Id.*). GK, in turn, contracted with Liberty Duct, LLC to fabricate the sheet metal duct, coat the duct with antimicrobial coating, and deliver the

coated ducts to the Project. (GK-Liberty Contract, Ex. 3 to Resp. Hartford MSJ, ECF No. 239-6).  Liberty agreed to fabricate and deliver all HVAC duct work and accessories per the Project plans and specification, including the application of antimicrobial coatings as required. (*Id.*).

The Contract stated that Liberty was to provide the labor, materials, equipment, supervision, and accessories "per plans, specifications, and [] approved shop drawings" to include "rectangular duct work . . . round duct work . . . [and] antimicrobial coating as required." (*Id.* at GK-LD000548).  Liberty fabricated the ductwork and applied the coating, supplied by a separate company called BioShield, as part of the fabrication process.  It then delivered the ductwork, in separate shipments, to the construction site to be installed by Plaintiff. (Watts Depo. at 22–23, Ex. 1 to NGM Partial Mot. Summ. J. ("NGM MSJ"), ECF No. 231-1).

After the ductwork was installed, GK notified Liberty that the antimicrobial coating on a portion of Liberty's ductwork was failing to adhere to the inside of the ductwork. (*See* Testing Results Email, Ex. 6 to GK Partial Mot. Summ. J. (GK MSJ), ECF No. 183-9).  Liberty delivered new duct to replace the duct that was delaminating. (Watts Decl. ¶ 10, Ex. 1 to GK MSJ, ECF No. 183-1).  Despite this replacement, during start-up and testing of the mechanical systems, flaking and/or delamination of the antimicrobial coating was observed. (*Id.* ¶ 11).  As a result, the FAA issued Non-Conformance Report No. 50 ("NCR 50") due to defects in the antimicrobial coating. (NCR 50, Ex. 3 to GK MSJ., ECF No. 183-6).  The flaking created a potential health risk and an environmental condition that would damage the mechanical systems, as well as sensitive computer and operating systems required for operating the Air Traffic Control Tower. (Watts Decl. ¶ 14).  The FAA thus rejected all circular ductwork, and AWC required GK to remove and replace all round ductwork. (5/19/14 FAA Letter, Ex. 4 to GK MSJ, ECF No. 183-7).  Remediation necessitated the removal of drywall, ceiling grid, electrical work, and other previously installed materials and equipment to allow for the removal

and replacement of the duct. (Watts Decl. ¶ 29).  GK ultimately removed and replaced all the ductwork by October 2014. (*Id.* ¶ 30).

Hartford issued three consecutive annual policies to Liberty Duct (collectively the "Hartford Policies") for coverage periods between October 15, 2010, and July 1, 2013. (Spectrum Policy, Ex. P to Hartford MSJ, ECF No. 230-2).  Each policy provides limits of $1 million Per Occurrence, $2 million General Aggregate, and Umbrella Coverage of $5 million Each Occurrence, Products-Completed Operations Aggregate, General Aggregate, and Bodily Injury by Disease Aggregate. (*Id.*).  The Hartford Policies do not include endorsements listing GK as an insured, named insured, or additional insured. (*Id.*).  However, each of the Hartford Policies includes a "blanket" additional insured provision that provides coverage for additional insureds by contract under specific circumstances. (Business Liability Coverage Form, Ex. Q to Hartford MSJ, ECF No. 230-2).

NGM issued a Businessowners Policy (the "Policy") to Liberty Duct that included both property and liability coverage, effective from October 15, 2011, to October 15, 2022. (NGM Policy, Ex. 1 to NGM First Mot. Dismiss, ECF No. 160-1).  The Policy was renewed for the October 15, 2012, to October 15, 2013, policy period, but it was cancelled for non-payment of premium effective May 11, 2013. (NGM Policy Cancellation, Ex. 2 to NGM Second Mot. Dismiss, ECF No. 188-2).   The Policy includes a non-contractors blanket additional insured endorsement. (NGM Policy at 89, Ex. 1 to NGM First Mot. Dismiss).

Because the parties are familiar with this case's lengthy history, the Court recounts only those facts relevant to this Order.  GK filed this lawsuit against Liberty Duct in June of 2014. (Compl., ECF No. 7).  Later in 2014, Liberty Duct put both Hartford and NGM on notice of this suit against it as their named insured. (12/8/2014 Ltr., Ex. H to Hartford MSJ, ECF No. 230-2); (Hoyer Decl. ¶ 7, Ex. 3 to NGM MSJ, ECF No. 231-3).  Both companies informed Liberty that they would not provide a defense or indemnity to it for the claims brought against

it. (12/8/2014 Ltr., Ex. H to Hartford MSJ); (12/4/2014 Ltr., Ex. 2 to NGM First. Mot. Dismiss, ECF No. 160-2).  In 2015, GK wrote Hartford and NGM asking both companies to reconsider their denial of coverage to Liberty Duct. (5/18/2015 Ltr., Ex. I to Hartford MSJ, ECF No. 230-2); (5/18/2015 Ltr., Ex. 3 to NGM First Mot. Dismiss, ECF No. 160-3).  GK sent a follow up letter to both companies, again requesting that they reconsider their denial of coverage to Liberty Duct and informing them that GK would seek default judgment against Liberty Duct in this lawsuit. (6/24/15 Ltr., Ex. J to Hartford MSJ, ECF No. 230-2); (6/24/15 Ltr., Ex. 4 to NGM First Mot. Dismiss, ECF No. 160-4).

NGM responded to those two letters explaining that its coverage position had not changed. (Hoyer Decl. ¶ 12, Ex. 3 to Reply NGM Second Mot. Dismiss, ECF No. 200-3). NGM did not receive a response from GK. (*Id.* ¶ 13).  Hartford also wrote to GK and, even though it had not received a formal tender from GK, it explained its position that GK was not entitled to additional insured coverage. (9/29/2015 Ltr., Ex. M to Hartford MSJ, ECF No. 230-2).  Hartford received no response to this letter from GK. (McCloskey Decl. ¶ 16, Ex. 3 to Hartford MSJ, ECF No. 230-3).

In 2019, Hartford filed a separate lawsuit seeking a judicial declaration that it owed no duties to Liberty Duct under the Hartford Policies in connection with this lawsuit. (Compl., Ex. K to Hartford MSJ, ECF No. 230-2).  In 2020, Hartford obtained a default declaratory judgment that Hartford owed no duty to defend or indemnify Liberty Duct under the Hartford Policies in connection with this lawsuit. (Default J., Ex. L to Hartford MSJ, ECF No. 230-2).

GK first asserted claims against Hartford and NGM in its Second and Third Amended Complaints. (Second Am. Compl., ECF No. 142); (Third Am. Compl. ECF No. 153).  GK filed its Fourth Amended Complaint in December of 2023. (Fourth Am. Compl., ECF No. 184).  The Fourth Amended Complaint asserts the following claims against Hartford: (1) breach of contract (Count 7), (2) breach of the implied covenant of good faith and faith dealing (Count 8),

(3) violation of the Nevada Unfair Claims Practices Act (Count 11), and (4) a claim for declaratory relief, seeking a declaration that GK is an additional insured (Count 12). It also asserts the following claims against NGM: (1) breach of contract (Count 6), (2) breach of the implied covenant of good faith and faith dealing (Count 9), (3) violation of the Nevada Unfair Claims Practices Act (Count 10), and (4) a claim for declaratory relief, seeking a declaration that GK is an additional insured (Count 12). The Court previously granted partial summary judgment in favor of GK on all but one of its claims against Liberty Duct. (Order, ECF No. 209). It also granted NGM's Motion for Default Judgment, granting declaratory judgment that NGM does not have a duty to defend or indemnify Liberty Duct. (Order, ECF No. 219).

Hartford now moves for summary judgment on all claims asserted against it, (Hartford MSJ), and NGM moves for summary judgment on the breach of contract and declaratory judgment claims asserted against it. (NGM MSJ).

## II.      **LEGAL STANDARD**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on which a reasonable fact-finder could rely to find for the nonmoving party. *See id.* "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's

favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quotation marks and citation omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible

discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. In other words, the nonmoving party cannot avoid summary judgment by "relying solely on conclusory allegations unsupported by factual data." *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

Under Nevada law, the interpretation of an insurance policy is a question of law for the court. *Starr Surplus Lines Ins. Co. v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark*, 535 P.3d 254, 260 (Nev. 2023) (en banc). "The purpose of contract interpretation is to determine the parties' intent when they entered into the contract." *Century Sur. Co. v. Casino West, Inc.*, 329 P.3d 614, 616 (2014) (en banc). A court interprets the policy language "from the perspective of one not trained in law or in insurance, with the terms of the contract viewed in their plain, ordinary and popular sense." *Id.* And a court views "the policy as a whole to give reasonable and harmonious meaning to the entire policy. *Id.* If the policy's language is unambiguous, the court "interpret[s] it according to the plain meaning of its terms. *Id.* A policy is considered ambiguous if "it creates multiple reasonable expectations of coverage as drafted." *Id.* (cleaned

up).  "[I]f an insurance policy has any ambiguous terms, [a] court will interpret the policy to effectuate the insured's reasonable expectations." *Id.*

### III.           <u>DISCUSSION</u>

The Court begins by addressing Hartford's Motion for Summary Judgment, before turning to NGM's Motion for Partial Summary Judgment.

### A.  Hartford's Motion for Summary Judgment

Hartford moves for summary judgment on all claims against it, asserting several arguments for why coverage for GK under the Hartford Policies is precluded.  Because the Court concludes that Liberty Duct was not an additional insured as defined in the Hartford Policies, it grants summary judgment in favor of Hartford on all claims.

It is undisputed that GK was not listed by endorsement as an insured, named insured, or additional insured on the Hartford Policies, (*see generally* Hartford Policies, Ex. P to Hartford MSJ, ECF No. 230-2).  Thus, for Hartford's duty to defend or indemnify GK to arise, GK must qualify as an additional insured under the definition in the Hartford Policies.  The parties also do not dispute that they agreed in a written contract that GK should be added as an additional insured on Liberty Duct's policy, as is required to be an additional insured under the Hartford Policies. (GK-Liberty Contract Section 12.01 at 8, Ex. 3 to Resp. to Hartford MSJ, ECF No. 241-6); (Business Liability Coverage Form at 12, Ex. Q to Hartford MSJ, ECF No. 230-2).  So, the main question before the Court is whether GK was an additional insured under the language of the Hartford Policies.  Because GK does not fall into either the "Any Other Party" or "Vendor" categories of the Hartford Policies' definition of additional insureds, the Court finds that GK was not an additional insured under the Hartford Policies.

 Section C, Paragraph 6 of the Business Liability Coverage Form defines six categories of additional insureds: (a) "Vendors," (b) "Lessors Of Equipment," (c) "Lessors Of Land Or Premises," (d) "Architects, Engineers or Surveyors," (e) "Permits Issued by State or Political

Subdivisions," and (f) "Any Other Party." (Business Liability Coverage Form at 12–13, Ex. Q to Hartford MSJ). Neither party argues that GK could fall into categories (b) through (e), so the Court's analysis focuses on category (f), "Any Other Party," and category (a), "Vendors."

### 1. "Any Other Party"

The Business Coverage Liability Form provides that "[a]ny other person or organization who is not an insured under Paragraphs **a.** through **e.**" is an additional insured "only with respect to liability for 'bodily injury', 'property damages' or 'personal and advertising injury,'" caused by the insured's acts or omissions:

"(a) In the performance of your ongoing operations;

(b) In connection with your premises owned by or rented to you; or

(c) In connection with 'your work' and included within the 'products-completed liability operations hazard', but only if:

> (i)     The written contract or written agreement requires you to provide such coverage to such additional insured; and

> (ii)    This Coverage Part provides coverage for 'bodily injury' or 'property damages' included within the 'products-completed operations hazard'"

(Business Liability Coverage Form at 13, Ex. Q to Hartford MSJ). Hartford argues that subsection (c) is the only subsection that could possibly apply, but it does not because the damage here was caused by Liberty Duct's products, not its work. GK disagrees, asserting that it is an additional insured under either subsection (c) or (a).

The Court begins with subsection (c). The Hartford Policies define and distinguish between the phrases "your work" and "your product." (*Id.* at 24). "Your work" is defined as "[w]ork or operations performed by you or on your behalf; and [] [m]aterials, parts or equipment furnished in connection with such work or operations." (*Id.*). "Your product" is defined as "[a]ny goods or products, other than real property, manufactured, sold, handled,

distributed or disposed of by [you]." (*Id.*).  Because coverage is available only in connection with Liberty Duct's "work," but the damage here arose from Liberty Duct's "product," Hartford contends that this subsection does not apply. (Hartford MSJ 15:25–16:4).

GK doesn't dispute that the damage was caused by Liberty Duct's products, not its work. (Resp. 15:5–6).  Instead, it generally asserts that it is an additional insured under subsection (c) because Liberty purchased the Products-Completed Operations coverage, which includes coverage for damage caused by Liberty's products. (Resp. 15:4–6).  But the language in the Business Coverage Liability Form is clear: it limits coverage to liability that arises *both* from Liberty Duct's work *and* is included within the products-completed operations hazard. (Business Liability Coverage Form at 13, Ex. Q to Hartford MSJ).  That the products-completed operations hazard could include coverage for both "your work" and "your product" does not change the analysis because subsection (c) expressly requires that liability arise out of "your work."  Thus, the language is clear[1] and precludes coverage for damages caused by Liberty Duct's products, as the parties agree is the case here.  Accordingly, GK cannot be an additional insured under subsection (c).

GK also argues that it could be an additional insured under subsection (a), which provides coverage for damages that arose "in the performance of [Liberty Duct's] operations." (Resp. 15:10–16).  It bases this argument on the fact that the ducting failed while being tested and the GK–Liberty Duct contract states that "no payment shall be construed to be an acceptance of defective work or improper materials." (*Id.*).  But the fundamental issue with this argument is that Liberty Duct was providing its products to GK, not its work.  As the definition of "products-completed operations hazard" explains, there are no "operations" in connection

---

[1] GK urges the Court to resolve any ambiguity in the contract in its favor, as is required under Nevada law. (Resp. 15:18–12).  While the law requires that "any ambiguity in an insurance policy must be construed against the insurer and in favor of the insured," *United Nat'l Ins. Co. v. Frontier Ins. Co. Inc.*, 99 P.3d 1153, 1156 (Nev. 2004), the language here is not ambiguous.

with "your product." (Business Liability Coverage Form at 23, Ex. Q to Hartford MSJ).
Liberty Duct was tasked with providing GK with its products; such a task inherently does not
involve "operations" that could be "ongoing." Thus, GK is also not an additional insured under
subsection (a). Accordingly, GK is not an additional insured under Paragraph C, Section 6(f).

### 2. "Vendor"

GK argues in the alternative that it qualifies as a "Vendor" under Paragraph C, Section
6(a). The Hartford Policy defines "Vendors" as "[a]ny person(s) or organization(s) (referred to
below as vendor), but only with respect to . . . 'property damages' arising out of 'your products'
which are distributed or sold in the regular course of the vendor's business. . . ." (Business
Coverage Liability Form at 12, Ex. Q to Hartford MSJ). GK explains that it "clearly" falls
under the definition of "Vendor" because Liberty Duct's products are distributed or sold in the
regular course of GK's business. Hartford disagrees with GK's characterization of itself as a
vendor because GK did not distribute or sell Liberty Duct's products, but instead purchased
them and installed them on the Project. (Hartford Reply 3:15–19, ECF No. 245). The Court
agrees with Hartford. GK was not distributing or selling Liberty Duct's products as the
definition of "Vendor" requires. Instead, it was responsible for the work it was contracted to
provide, and it utilized Liberty Duct's ductwork to perform that work. (*See* GW-AWC
Subcontract at 1, Ex. 2 to Resp. Hartford MSJ, ECF No. 239-5). GK didn't sell the ductwork to
AWC, and AWC didn't pay GK for the ductwork itself; rather, it paid for GK's work, which
involved installing the ductwork. Thus, GK is not a "Vendor" as defined in the Hartford
Policies.

In sum, the Court concludes that GK is not a "Vendor," and does not fit the definition of
"Any Other Party" that qualifies as an additional insured on the Hartford Policies. The Court
finds that GK does not qualify as an additional insured, and Hartford therefore owes no defense
or indemnity obligation to GK. The four claims asserted against Hartford rely on GK being an

additional insured on the Hartford Policies. (Fourth Am. Compl. ¶¶ 107–108, 115, 142).

Because the Court finds that GK was not an additional insured on the Hartford Policies, all

claims against Hartford fail as a matter of law.  Accordingly, the Court GRANTS Hartford's

Motion for Summary Judgment.

### B.  NGM's Motion for Summary Judgment

NGM moves for summary judgment on Counts Six and Twelve of GK's Fourth

Amended Complaint. (NGM Mot. Summ. J ("NGM MSJ") 1:23–24, ECF No. 231).  The

Motion asserts several bases for summary judgment, beginning with the argument that GK is

not an additional insured under the NGM Policy.

The NGM Policy includes a "Non-Contractors Blanket Additional Insured

Endorsement." (NGM Policy at 89, Ex. A to NGM Mot. Dismiss, ECF No. 160-1).  That

endorsement extends coverage only to where coverage is required in a contract with the insured

and only to liability for "bodily injury" or "property damages" that are caused by the insured's

acts or omissions either "[i]n the performance of [the insured's] ongoing operations or 'your

work' included within the 'product's-completed operations' hazard for the additional insured."

(*Id.*).  As with the Hartford Policies, the NGM Policy distinguishes between "your work" and

"your product," (*id.* at 69–70), and the additional insured endorsement extends coverage only to

liability arising out of the insured's "work," not its "product." (*Id.* at 89).  Once again, GK does

not dispute that the liability arose out of Liberty Duct's products rather than its work. (Resp.

NGM MSJ 22:1–13).  Because the NGM Policy explicitly states that coverage is limited to

liability arising out of "your work," GK's argument that the "products-completed operations

hazard" covers both "your work" and "your product" is again unavailing for the reasons

explained above.  GK is also not an additional insured under the "ongoing operations" clause

for the same reasons explained in the Court's analysis of the same language in the Hartford

Policies.  The Court concludes that GK is not an additional insured under the NGM Policy

because it precludes additional insured coverage for liability arising out of Liberty Duct's products, and the liability did not arise in the performance of Liberty Duct's "ongoing operations." Accordingly, summary judgment is warranted on the claim for declaratory relief and the breach of contract claim, since both rely on the premise that GK is an additional insured on the policy. Thus, the Court GRANTS NGM's Motion for Partial Summary Judgment.

### C. Remaining Claims

Following the entry of this Order, only three claims remain in GK's Fourth Amended Complaint: (1) the negligence claim against Liberty Duct, (2) the bad faith claim against NGM, and (3) the claim under the Nevada Unfair Claim Practices Act against NGM.

Under Federal Rule of Civil Procedure 56(f), a court may grant summary judgment in favor of a nonmoving party "[a]fter giving notice and a reasonable time to respond." Fed. R. Civ. P. 56(f)(1); *Norse v City of Santa Cruz*, 629 F.3d 966, 971 (9th Cir. 2010). Based on its findings above, the Court questions whether GK's remaining claims against NGM can survive summary judgment. However, GK has not had a full and fair opportunity to address why summary judgment on its claims against NGM should not be granted. Thus, the Court informs the parties that it will *sua sponte* consider whether summary judgment should be granted on the remaining two claims against NGM. The Court ORDERS the parties to brief whether NGM is entitled to summary judgment on the remaining two claims against it based on the findings in this Order. NGM must file a supplemental brief, not to exceed 10 pages, no later than 30 days from the date of this Order. GK must file a response, not to exceed 10 pages, no later than 14 days following the filing of NGM's supplemental brief. The Court notes that the parties should not use the supplemental briefing to raise arguments previously considered and rejected by the Court.

**IV.** **CONCLUSION**

**IT IS HEREBY ORDERED** that Hartford Casualty Insurance Company's Motion for Summary Judgment, (ECF No. 230), is **GRANTED.**

**IT IS FURTHER ORDERED** that NGM Insurance Company's Motion for Partial Summary Judgment, (ECF No. 231), is **GRANTED.**

**IT IS FURTHER ORDERED** that NGM Insurance Company must file a supplemental brief, not to exceed ten pages, on whether the final two claims asserted against it survive the findings in this Order. NGM must file that supplemental brief no later than 30 days after the entry of this Order. GK must file a response, not to exceed 10 pages, no later than 14 days after the filing of the supplement brief.

**DATED** this ___23___ day of December, 2025.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT